## FRANK WILLIAMS V. THE STATE.

### No. 5923. Decided November 3, 1920.

**1.—Murder—Evidence—Involuntary Confessions—Coercion—Charge of Court.**

Where, upon trial of murder, the State introduced the written confession of the defendant against which the defendant urged the objection that it was not voluntary, and the record showed without conflict the said confession to have been the result of coercion, the court should have rejected the same and not submitted it with the evidence to go before the jury, instructing them to reject the confession unless it was shown to have been voluntary.

**2.—Same—Evidence—Confession—Coercion—Subsequent Confessions.**

Where the evidence showed that the defendant was commanded by the sheriff to make the various statements before him, that he was denied communication with his friends, relatives or attorney, and after denying his connection with the homicide was whipped by the sheriff with a leather strap about two and one-half feet long, etc., and severely injured, the confession was inadmissible which he afterwards made in writing while he was still under the influence which coerced him into the admission of guilt in the first place. Following Walker v. State, 7 Texas Crim. App., 263, and other cases.

**3.—Same—Rules Stated—Confessions—Coercion—Subsequent Confessions.**

Although no unbending, universal rule can be laid down by which to determine whether subsequent confessions in a criminal case are admissible when the former confessions were obtained by improper influences, yet in each case the inquiry must be whether, considering the degree of intelligence of the prisoner, and all the attendant circumstances, it is affirmatively shown that the effect of the primary improper conduct was so entirely obliterated from his mind that the subsequent confession could not have been in the slightest degree influenced by it; and if there be any doubt on this question, it must be resolved in favor of the prisoner and the confession must be excluded, following Roberts v. State, 81 Texas Crim. Rep., 378.

**4.—Same—Evidence—Subsequent Written Confession.**

Where, upon trial of murder, the written confession of the defendant while under arrest was admitted in evidence over his objection, and the record showed the absence of any evidence which would justify the conclusion that at the time the defendant made the written confession the improper influences which had been used shortly before upon him by the officer were not prevailing, but that he was still smarting under the blows that he had but recently received from the officer, etc., the same was inadmissible and reversible error.

**5.—Same—Evidence—Confession—Rule Stated—Involuntary Confessions.**

When proof that the confessions were voluntary is essential to admit them in evidence, and the testimony is conflicting upon that issue it is the correct practice to submit them to the jury for solution, when, however, as in the instant case, as to such confessions, the evidence shows without conflict that they became about from coercion upon the part of the officers in charge of the prisoner, the court should have excluded them, and not have submitted the matter to the jury

**6.—Same—Evidence—Verbal Confession—Instrument Used—Exception to Rule.**

Where the defendant told the officer, who had him under arrest, to go to a certain place and he would find certain evidences where horses had been hitched near the scene of the homicide; that the wire fence was mashed down near by and that he would find a certain shell at a certain place, all of which he and his companions used in the homicide, and the officer thereafter found these matters to be true, there was no error in admitting the confessions, although they were not made in writing and according to the statute. Following Spearman v. State, 34 Texas Crim. Rep., 279, and other cases.

**7.—Same—Evidence—Confessions—Grand Jury—Rule Stated.**

Where, upon trial of murder, the defendant, before he was indicted made a statement before the grand jury which was taken down in shorthand and later transcribed but never signed by the defendant, and the same sontained inculpatory declarations and was used by the State against the defendant, as a confession proving his guilt, and it was made while he was under arrest and in the custody of the officer, the same was inadmissible and reversible error. Qualifying Bailey v. State, 65 Texas Crim. Rep., 1, 144 S. W. Rep., 1000.

**8.—Same—Rule Stated—Grand Jury—Confessions—Statutes Construed.**

The rule is equally well-established that where one is under arrest, and· makes a confession under circumstances not conforming to the provisions of the statute governing confessions, the fact that it is made in the presence of the grand jury does not render it admissible, and does not come within the exceptions provided by the Statute, Article 810, C. C. P. Following Fry v State, 58 Texas Crim. Rep., 169, and other cases.

**9.—Same—Rule Stated—Confessions—Grand Jury.**

Where a statement, admission, or confession of an accused party, when under arrest or in confinement, is sought to be used under the present statute, the same must be reduced to writing under the formalities and solemnities set out in the terms of the statute. Where this was not done in the instant case, and defendant made a verbal statement before the grand jury not reduced to writing and signed by him, the same was inadmissible. Following Brown v. State, 47 Texas Crim. Rep., 147; Oliver v. State, 81 Texas Crim. Rep., 530, and other cases.

**10.—Same—Statutes Construed—Amended Statute—Judicial Construction.**

Upon the subject of confessions, the old statute, under the old Code, Article 662, C. C. P., was like the present statute, save that in the former it was not required that the statement of the accused be reduced to writing and signed by the party, and simply provided that, unless the confession made by a defendant when in jail or other place of confinment or in custody of an officer comes within one of the exceptions named in said old article of the Code, it cannot be used in evidence against the defendant, and this rule applies to statements before the grand jury. Following Thomas v. State, 35· Texas Crim. Rep., 178, and other cases; and having thus been construed by the courts to give effect to the legislative intent, the same construction was thereafter sanctioned and adopted by the Legislature in the amendment of the Statute. Following Lewis v. State, 58 Texas Crim. Rep., 351, and other cases.

**11.—Same—Case Stated—Confessions—Grand Jury.**

Upon trial of murder, the statement of the defendant made before the grand jury while he was under arrest does not come within any of the ex-

ceptions named in the statutes, it not having been reduced to writing and signed by him and could therefore not be used on the trial to prove his guilt, but should have been excluded upon the objection of defendant, and a failure to do so was reversible error.

### 12.—Same—Evidence—Acts of Co-conspirators—Fruits of Crime—Principals.

Where it was the theory of the State that in the murder of the deceased the defendant and another were acting together, there was no error in introducing testimony that the witness, some two week after the murder, had been found in possession of a watch belonging to the deceased, to state that he got the same from the co-principal of the defendant, as it came within the rule of co-conspirators found after the homicide in possession of the fruits of the crime. Following Pierson v. State, 18 Texas Crim. App., 561, and other cases.

### 13.—Same—Evidence—Cross-examination—Credibility of Witness—Explanation.

Where, on cross-examination, defendant's counsel elicited from the State's witness and admission that soon after the murder the witness had declared that the watch referred to as coming from the co-principal of defendant had been obtained by him from someone else, there was no error in permitting the State to have the witness explain that he made this false statement because he was threatened by one of the defendants if he disclosed that he got the watch from them.

Appeal from the District Court of Travis on a change of venue. Tried below before the Honorable James R. Hamilton, Judge.

Appeal from a conviction of murder; penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

*W. W. Hair*, for appellant.—The verbal confession of a defendant who is in custody and under arrest made to the grand jury, is inadmissible against him on his trial, unless in connection with said confession he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt: Article 810, C. C. P., Oliver v. State, 197 S. W. Rep., 185; Askew v. State, 127 id., 1037; Robertson v. State, 195 id., 602; Fry v. State, 124 id., 920.

Where material testimony has been illegally admitted and the jury does not assess the lowest punishment, admission of such legal confession is material error, and the case must be reversed: Hurst v. State, 217 S. W. Rep., 156; Tinsley v. State, 106 id., 347; King v. State, 57 id., 840.

On question of admitting in evidence watch found on witness etc., and statements of co-deefndant: McHenery v. State, 61 S. W. Rep., 311; Sarli v. State, 189 id., 149; Boyd v. State, 180 id., 230; Overstreet v. State, 150 id., 630; Day v. State, 138 id., 124; O'Quinn v. State, 115 id., 39; Ezell v. State, 65 id., 370.

Where it appears from the record that a confession of defendant was secured by violence, fear, etc., while the defendant was in jail

and in custody of officers, and that the same was not voluntary or freely made, the same was inadmissible in evidence. Robertson v. State, 195 S. W. Rep., 602, and cases cited in opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The appellant was convicted of murder, and punishment fixed at confinement in the penitentiary for a period of thirty-five years. The case of Finks v. State, 84 Texas Crim. Rep, 536, 209 S. W. Rep., was for the same homicide, and some of the matters there discussed are pertinent to this appeal.

The State, in the development of its case, introduced against the appellant three confessions. The first was in writing, bearing date the twenty-eighth day of July, 1917. The second was a verbal confession testified to by Sheriff Plott, and claimed by him to have been made at Waco on the night of July 28. The other was a verbal confession, claimed to have been made by the appellant before the grand jury in Marlin, Falls County, in September following the homicide which took place on the twenty-sixth day of July. Against the admission of the written confession there was urged the objection that it was not voluntary, and the court, after hearing evidence upon this point, decided that there was an issue of fact, and permitted the confession with the evidence to go before the jury, instructing them to reject the confession unless it was shown to have been voluntary. The appellant, by appropriate bills. challenged the correctness of this action of the court upon the ground that the evidence, without conflict, showed the confession to have been the result of coercion. From the evidence adduced before the court, it appears that the appellant was a negro twenty-six years of age. All of the statements were made while he was under arrest and in custody of the sheriff. He testified that he was commanded by the sheriff to make the statements; that he was denied communication with friends, relatives, or attorneys; that on his arrest the day after the homicide he was brought to the jail in Marlin, and denied any connection with the homicide, and was then whipped by the sheriff, who used a leather strap about two and one-half feet long with some strips of leather sewed on the end of it; that he was whipped all over the head, shoulders, and neck, and that there remained scars on his body and head. These scars were exhibited, and testimony relating to them was given by a doctor and another witness. Appellant testified further that the injuries to his arm prevented its use for a month, and caused him to swell up so that he could not lie on his side for several months; that he was whipped with the side of the strap and the butt end of it, and nearly killed; that when he came to, they were kicking him in the side; that his head still gave pain and swelled up. The swelling was verified by other witnesses. He testified to subsequent whippings in the jail at Marlin, and that on one occasion a stick was

used by the sheriff which cut the blood, and caused an injury from which he had not yet recovered; that he was told by the sheriff to go before the grand jury, and make the same statement that he had made to him, otherwise he would be mobbed, and if he did make the same statement he would be discharged after certain white men, against whom suspicion rested had been dealt with. In the jail other witnesses, negroes, were severely and cruelly whipped by the sheriff. One of them was put in water, and his head held in water until he was almost drowned. Another, a woman, was stripped of her clothes, laid on the floor, and severely whipped and strapped. Of this the appellant had information. Some of these whippings were manifestly made after the written statement dated July 28th, taken at Waco, was signed. All of them were before the statement was given before the grand jury in Marlin in September.

On this hearing the gentleman who was County Attorney at the time said: "I was in jail that afternoon, and talked to Frank Williams. He was whipped by Mr. Plott in my presence. A strap was used with a wooden handle on it. He was whipped there a little while, I don't know, three, four, or five minutes possibly, I don't know the time. He was·not whipped any more that afternoon while I was present. I was present when he was taken from the jail to Waco. After the whipping the negro said: 'Yes, I did it.'"

The sheriff testified with reference to the occurrence: "I went and got the county attorney, and went up there, and Frank commenced trying to deny it. As well as I remember, I hit Frank one or two licks with the strap. He told me then about it. He said: 'Let me go and I will tell the whole thing.' and he made a confession. When he was brought back from Dallas to the Marlin jail I did not give him any special punishment. I hit him out there in the bottom with a stick one lick, not very hard."

He said he whipped the woman severely because she would not tell anything about it. He also admitted severely punishing another witness. It was shown that the written statement was written in the courthouse, and that while the appellant was in the courthouse and the statement was under preparation no threats were made and no unkindness shown.

When proof that the confession was voluntary is essential to admit it in evidence, and the testimony is conflicting upon that issue, it is the practice to submit it to the jury for solution. Sparks v. State, 34 Texas Crim. Rep., 86, and other cases, Branch's Ann. Texas P. C., sec. 75. When, however, as to such a confession the evidence shows without conflict that it came about from coercion upon the part of the officers in charge of the prisoner, the court should exclude it. In the instant case, the evidence is without conflict to the effect that before the appellant was whipped by the sheriff he denied any connection with the offense, and that his admission of it was while he was under the lash. The written confession introduced in

evidence was made but a short time subsequent to the admission which the appellant admittedly was driven to make. It was made under the domination of the same officer who had assaulted him, and while others were present, and at the immediate time that he signed the written confession there were no threats or violence used, we think the presumption should obtain, in the absence of evidence rebutting it, that the same influences which coerced him into the admission of guilt in the first place impelled his subsequent reaffirmance of guilt, or guilty knowledge. There is an absence in the record of any evidence which, to our minds, would justify the conclusion that at the time he made the written confession the improper influences were not prevailing. The sheriff admits that in his private interviews with the appellant he made him know that he must not change his statement. The appellant, when the written statement was signed, was looking into the face of the sheriff into whose custody the law placed him, smarting with the blows that he had but recently received, dreading their recurrence, and conscious of the fact that if he refused to make the statement he was to go back under the control of the sheriff whose zeal for his conviction was such that he scrupled not to break the law in order to force a confession from the accused. The state's testimony fails, in our judgment, to raise an issue against this view. This court, in Walker v. State, 7 Texas Crim. App., 263, quotes with approval the rule in the following language:

"Although no unbending, universal rule can be laid down by which to determine whether subsequent confessions in a criminal case are admissible when the former confessions were obtained by improper influences, yet in each case the inquiry must be whether, considering the degree of intelligence of the prisoner, and all the attendant circumstances, it is affirmatively shown that the effect of the primary improper inducement was so entirely obliterated from his mind that the subsequent confession could not have been in the slightest degree influenced by it; and if there be any doubt on this question, it must be resolved in favor of the prisoner, and the confession must be excluded."

Tested by this rule, which we regard as a sound one, we think the admission of the written confession was improper. Greenleaf on Crim. Evidence, sec. 677; Underhill on Crim. Evidence, secs. 128 & 129; Robertson v. State, 81 Texas Crim. Rep., 378, 195 S. W. Rep., 602; Barnes v. State, 36 Texas, 357; Coffey v. State, 23 American State Rep., 533; Murray v. State, 25 Fla. Rep., 533; 18 L. R. A., New Series, 792; Bogg v. State, 32 Ala. Rep., 560; Corley v. State, 50 Ark. Rep., 305; McNitsch v. State, 110 State Rep., 65; State v. Drake, 113 North Carolina Rep., 624; Levison v. State, 54 Ala. Rep., 520; Owen v. State, 56 Amer. Rep., 40, 18 L. R. A., New Series, p. 857.

On the night of the day on which the written confession was made, the sheriff, according to his testimony, had a conversation with the

appellant in the basement of the jail at Waco. Of this conversation the sheriff says: ''Defendant told me in the basement of the courthouse at Waco, he told me that night that when I got back from Waco to Marlin he wanted me to 'go over there on the Finks' farm and go to his house and go up a little string of fence up the hill on top of a rise, and he says you will find where we mashed the wire down—we mashed the wire down for them to cross the fence, and when you get there you will turn to your left and go over the little hill to the cross fence, and he says that is where they hitched the horses; and he says after we killed him we came back there and that is where we unloaded the gun. After I went back to Marlin I went back to his house and followed out his instructions and went just exactly like he told me, as I said, and found the shell. I also found where the fence had been mashed down—I went out just like he told me and found where this wire had been mashed down; there was horses' tracks, and after they crossed this wire, why, they turned in a sort of south direction on down a little ravine, I reckon two hundred steps, and that is where it looked like two horses had been hitched and where they had stamped around and where I found the empty cartridge hull. At the place where it appeared the horse had stood I found where their bowels had moved—showed, you know, looked like to be a day or two old, two or three days old. Before that time I did not know and had no information as to where that shell was or as to the place on the ground there showing where two horses had stood and the droppings from them.'' We think the court was not in error in admitting this statement. Its admissibility rests upon that provision of the statute on confessions which permits the introduction of verbal and unwritten statements of the accused while under arrest and unwarned in instances where ''in connection with the confession he makes statements of facts or circumstances that are found to be true. and which conduce to establish his guilt, such as finding the secreted or stolen property, or the instrument with which he states the offense was committed.'' Spearman v. State, 34 Texas Crim. Rep., 279; Collins v. State, 30 Texas Crim. App., 419; Branch's Ann. Texas P. C., sec. 63.

The body of the deceased, Hal St. Clair, was found in his pasture on the night of July 26, the wounds on his body and surrounding facts indicating that he had been assassinated by someone shooting him, using a shotgun. The appellant was arrested soon after the homicide, and charged with the offense, and in November of the same year was indicted. Before he was indicted, he made a statement before the grand jury, his statement having been taken down in shorthand and later transcribed by the stenographer, but never signed by the appellant. The · statement contained inculpatory declarations, and was used by the State against the appellant as a confession proving his guilt. It affirmatively appears from the bill of exceptions that appellant had been confined in jail from the time of his arrest,

and was taken from the jail to the grand jury room by the sheriff
and deputy sheriff, and was returned to the jail after the statement
was made. In other words, it affirmatively appears that he was un-
der arrest and in custody at the time the statement was made. Vari-
ous objections were urged to the statement, among others that it was
not a statement in writing signed by the appellant, and that the
absence of these prerequisites of the statute, it being admissible un-
der no other provision of the statute, rendered the evidence inadmis-
sible.

To support the ruling of the court, State's counsel refers to the
case of Bailey v. State, 65 Texas Crim. Rep., 15, 144 S. W. Rep.,
1000, in which there was used against the accused a statement in
writing signed by Bailey, and made by him in the presence of the
grand jury while he was under arrest. In this statement, it was
made to appear over the signature of the appellant that before mak-
ing the statement he had been warned that he did not have to make
a statement, and that any statement made could be used against him,
and not for him. It was claimed that the warning was informal and
insufficient. It was also objected that the appellant was under ar-
rest. Overruling these objections, the appellate court used the fol-
lowing language:

"The State, before offering this instrument in evidence, had proven
by the district attorney that defendant came before the grand jury
to testify as a witness. This was a right he had, to voluntarily go
before the grand jury and make a statement. He could be compelled
to do so and, if after being duly warned, as the statement shows
he was, and which is not denied, he voluntarily testifies before that
body, such testimony is admissible in evidence. Thomas v. State, 35
Texas Crim. Rep., 178, 32 S. W., 771; Jones v. State, 33 Texas Crim.
Rep., 7, 23 S. W., 793; Paris v. State, 35 Texas Crim. Rep., 82, 31
S. W., 855; Wisdom v. State, 42 Texas Crim. Rep., 579, 61 S. W.
926; Grimsinger v. State, 44 Texas Crim. Rep., 26, 69 S. W., 583.
*The statutes relating to extra-judicial confessions do not relate to the
testimony of a witness given at a former trial or testimony voluntarily
given before a grand jury or examining trial after being duly warn-
ed.*"

The appellant insists that on the question up for decision the opin-
ion is not adverse to his contention upon this hearing, and that that
part of it italicized, declaring that the statute prescribing the form-
alities for confessions has no force where the confession is made in
the presence of the grand jury, is dictum, not necessary to the deci-
sion of the case, not supported by the authorities cited, but, on the
contrary, in opposition to the decisions of this court, and to the
language of the statute relating to confessions.

The cases referred to in the quotation appear not to have been cited
as supporting the part of the quotation in italics, but to the point

that a confession, wherein the statutory formalities have been complied with, is not to be excluded because made in the presence of the grand jury. This is a principle that has long obtained. In the case of Thomas v. State, 35 Texas Crim. Rep., 178, in admitting the confession the court said:

"Confessions of appellant were introduced in evidence over objection. They were made while in arrest, but under proper caution." To the same effect are Grimsinger v. State, 44 Texas Crim. Rep., 1; Smith v. State, 48 Texas Crim. Rep., 510; Pierce v. State, 54 Texas Crim. Rep., 425; Mackey v. State, 68 Texas Crim. Rep., 539, 151 S. W. Rep., 803; Goodwin v. State, 70 Texas Crim. Rep., 600, 158 S. W. Rep., 274; Rogers v. State, 71 Texas Crim. Rep., 149, 159 S. W. Rep., 40, and others.

The rule is equally well established that where one is under arrest, and makes a confession under circumstances not conforming to the provisions of the statute governing confessions, the fact that it is made in the presence of the grand jury does not render it admissible. An illustration of this will be found in the case of Simmons v. State, 79 Texas Crim. Rep., 341, 184 S. W. Rep., 226, in which the statement of the accused made before the grand jury, when under suspicion of the crime, without warning and not reduced to writing, was considered. Prendergast, Presiding Judge, writing the opinion of this court, expressed its views as follows: "On this trial, they introduced the foreman of the grand jury and permitted him, over her objections, to testify what she had testified before the grand jury. The admission of the grand juror's testimony was clearly erroneous, and must result in the reversal of the judgment. Wood v. State, 22 Texas App., 431, 3 S. W., 336; Gilder v. State, 35 Texas Crim. Rep., 360, 33 S. W., 867; Calloway v. State, 55 Texas Crim. Rep., 262, 116 S. W., 575; Fry v. State, 58 Texas Crim. Rep., 169, 124 S. W., 920. It is unnecessary to cite other cases." The court's opinion, written by DAVIDSON, Presiding Judge, in Brown v. State, 55 Texas Crim. Rep., 582, is clearly and definitely to the point that under the statute taking effect the twelfth of July, 1907, now embraced in Article 810, C. C. P., the confession of one before the grand jury while under arrest cannot be used against him upon his trial, unless it appears, as provided in the statute, that he was duly warned, and the statement be reduced to writing, and signed by him. The court said: "Evidently, the legislative intent here enumerated is that confessions under the circumstances stated in this Act shall exclude all verbal confessions, except as provided in said act. The confession and statement here sought to be used and read to the jury are clearly outside of it, and not included in the provisions of the said Act of the Legislature."

The case of Fry v. State, 58 Texas Crim. Rep., 170, was one in which the accused while under arrest made a statement before the grand jury, which was used against him upon the trial. He was not warned,

and the statement was not reduced to writing. It was held inadmissible. The court said: "Where a statement, admission, or confession of an accused party, when under arrest or in confinement, is sought to be used under the present statute the same must be reduced to writing, under the formalities and solemnities set out in the terms of the statute. The statements of the appellant were not reduced to writing as required by the recent statute, and were therefore inadmissible."

A like ruling was made in an opinion by HENDERSON, Judge, in Bowen v. State, 47 Texas Crim. Rep., 147. In fact, unless the case of Bailey v. State, *supra,* may be regarded as a departure, we find no instance in which this court, when the question was presented, has failed to declare that a statement made by one accused of crime, before the grand jury, while under arrest, was within the statute relating to confessions and inadmissible against the accused on his trial in the absence of a compliance with the statute mentioned. The subject was reviewed in Oliver's case, 81 Texas Crim. Rep., 530, in which it is said: "The fact that the confession is made in the presence of the grand jury does not render it admissible, nor prevent it. The inquiry is: 'Was the confession made under the conditions and with the formalities required by statute to make admissible a confession when the accused is under arrest?'"

Further the court said: "Appellant's confession was made while he was in the custody of an officer, and was voluntary and after warning. It was not in an examining court, it was not reduced to writing, it was not signed by the appellant, and its introduction against him was prohibited by Article 810, C. C. P."

Upon the subject of confessions, the old statute was like the present statute, save that in the former it was not required that the statement be reduced to writing and signed by the party. White's C. C. P., Art. 790; Old Code, Art. 662. Construing the old statute, the rule is laid down that: "Unless the confession made by the defendant when in jail, or other place of confinement, or in the custody of an officer, comes within one of the exceptions named in Article 790, it cannot be used in evidence against the defendant." White's C. C. P., Art. 1023; Lopez v. State, 12 Texas Crim. App., 27. This rule applied to statements before the grand jury, (Thomas v. State, 35 Texas Crim. Rep., 178; Paris v. State, 35 Texas Crim. Rep., 82; Twiggs v. State, 75 S. W. Rep., 531) but did not apply to the reproduction of testimony given by the appellant upon the trial of his case in open court. Collins v. State, 39 Texas Crim. Rep., 447; Pressler v. State, 41 Texas Crim. Rep., 313; Branch's Ann. Texas P. C., secs. 80 & 81.

Cognizant of the construction the courts have given to Article 790, and aware of the long experience of the courts in administering the statute on confessions which permitted the proof of verbal confessions while the accused was under arrest, the Legislature found

it expedient, in 1907, to substantially re-enact the statute with the additional provision that in addition to the warning the statement should be in writing and signed by the party. Acts 1907, p. 219; C. C. P., Art. 810. The purpose of the statute, to prohibit the proof of verbal confessions made by the accused while under arrest which did not come within some of the exceptions named in the statute, is manifest, and has been emphasized by frequent expressions of the court in its construction. These decisions have undertaken to give effect to the legislative intent in making amendment to the statute, viewed in the light of the judicial expressions interpreting the statute before it was amended, which expressions under well-recognized rules of construction are presumed to have been sanctioned and adopted by the Legislature. Lewis v. State, 58 Texas Crim. Rep., 351, and authorities listed.

The statement of the appellant made before the grand jury while he was under arrest, comes within no exception named in the statute was not reduced to writing, nor signed by appellant, and was used upon the trial to prove his guilt. It should have been excluded upon the objection of the appellant.

It was the theory of the State that in the murder of the deceased the appellant and Frank Finks were acting together. The witness named Israel, some two weeks after the murder was found in possession of a watch belonging to the deceased. In permitting this witness to testify that he got the watch from Finks on the day after the homicide, we think the court committed no error. It came within the rule permitting proof of the acts of a co-conspirator found in possession of the fruits of the crime. Pierson v. State, 18 Texas Crim. App., 561, and other cases collated in Branch's Ann. Texas P. C., sec. 695.

On cross-examination, defendant's counsel elicited from this witness Israel an admission that soon after the murder he had declared that the watch referred to had been obtained by him from one Tolliver, whereupon he was permitted, at the instance of the State, to explain that he made this false statement because Finks had threatened to kill him if he disclosed that he got the watch from Finks. The objection to this explanation, we think, is not tenable, for the reason that the appellant, having introduced a contradictory statement to discredit the witness, the State was within its rights in permitting the witness to explain the contradiction, and thereby, to the extent that it would do so, restore his credibility.

There are criticisms of the court's charge, but they relate to the manner of submitting issues growing out of appellant's statement before the grand jury, improperly in evidence, and we deem it unnecessary to review them.

The materiality of the evidence which was admitted, and should have been excluded, cannot be the subject of question in view of the

verdict of the jury. The admission in evidence of the written confession taken at Waco, and of the verbal statement made by the appellant before the grand jury, constitutes error which, in our judgment, requires a reversal of the judgment.

*Reversed and remanded.*